UNITED STATES of America, Appellee,

v.

Bobby TODD, Appellant.

No. 81–1149.

United States Court of Appeals, Eighth Circuit.

Submitted June 19, 1981.

Decided Aug. 26, 1981.

Rehearing Denied Oct. 23, 1981.

Ben K. Upp (argued), Springfield, Mo., for appellant.

J. Whitfield Moody, U. S. Atty., Kansas City, Mo., Robert G. Ulrich, Asst. U. S. Atty. (argued), Springfield, Mo., for appellee.

Before ROSS, Circuit Judge, GIBSON, Senior Circuit Judge, and ARNOLD, Circuit Judge.

ROSS, Circuit Judge.

Bobby Todd appeals from his conviction[1] for conspiracy to rob, conspiracy to murder and second degree murder in violation of 18 U.S.C. §§ 371, 1117 and 1111.[2] We affirm the conviction of murder and reverse both conspiracy convictions. 622 F.2d 298.

On April 30, 1977, a hunter discovered the remains of Frederick E. Williams in a remote wooded area within Fort Leonard Wood, Missouri. Williams had been a private first class in the army stationed at Fort Leonard Wood. On May 2, 1977, Dr. Gerald A. Rappe, an army pathologist, performed an autopsy and determined that Williams had been dead for at least six weeks. Dr. Rappe discovered a massive hole in the right side of Williams' skull and determined that the hole was the result of a blow from behind with a heavy unyielding instrument, possibly a tire iron. Dr. Rappe could not positively determine whether the blow had been struck before or after death; nor could he say with certainty whether Williams had died as a direct result of the head injury.

Almost two years after the discovery of Williams' body, defendant Todd gave two statements concerning the death of Williams. In a statement dated February 12, 1979, Todd said he, Williams and three other men went to a lounge located outside the boundaries of Fort Leonard Wood. Todd stated that it had been previously agreed that he would lure Williams out of the lounge where the men would rob Williams. Once outside the lounge, an individual named Ward struck Williams on the head with a tire iron and the four men transported Williams' body to the wooded area where his remains were found.

In Todd's second statement, dated February 17, 1979, Todd indicated that a plan to rob Frederick Williams originated at Fort Leonard Wood. The plan involved luring Williams off the fort to Birdland Lounge where he was to be robbed. Todd's statement included four sketches of the incidents of Williams' death, two of which indicate the wooded area where Williams' remains were located.

On appeal Todd contends that there is insufficient evidence (1) to establish federal jurisdiction, (2) to support the conspiracy convictions, and (3) to support the murder conviction.

### Federal Jurisdiction

Defendant argues that federal jurisdiction is lacking because there was no proof that either the alleged conspiracies or the alleged murder were committed within the boundaries of Fort Leonard Wood. We address these issues separately below.

### A.  Jurisdiction Over Conspiracy Charges

Defendant argues that there is no federal jurisdiction over the conspiracy claims[3] because the plan to rob and murder Williams (assuming such agreement existed) involved accomplishing these acts outside the boundaries of Fort Leonard Wood and thus outside the jurisdiction of federal courts. Defendant's contention is that the federal

---

1. The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

2. Todd received concurrent sentences of five years for conspiracy to rob, fifty years for conspiracy to murder and fifty years for second degree murder.

3. Jurisdiction over the conspiracy charges was predicated on 18 U.S.C. §§ 371 and 2111 which read as follows:
    § 371.
     If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both. § 2111.
     Whoever, within the special maritime and territorial jurisdiction of the United States, by force and violence, or by intimidation, takes from the person or presence of another anything of value, shall be imprisoned not more than fifteen years.

court did not have jurisdiction over the substantive crimes of robbery and murder because the crimes occurred outside the boundaries of the fort, therefore the federal court should not have exercised jurisdiction over the conspiracy charges solely on the basis of the locus of planning.

The Supreme Court has held that where the conspiracy is laid within the jurisdiction of the federal courts, federal jurisdiction exists though the acts in furtherance of the conspiracy occurred outside the jurisdiction of the federal courts. *Ford v. United States*, 273 U.S. 593, 606–07, 47 S.Ct. 531, 535–36, 71 L.Ed. 793 (1927); *Leonard v. United States*, 500 F.2d 673, 674 (5th Cir. 1974). The defendant's statement establishes that the conspiracy was originally planned within the boundaries of Fort Leonard Wood. We hold that the defendant's statement, if it had been corroborated, supplied sufficient evidence to determine that if a conspiracy was formed it was formed within the jurisdiction of the federal courts.

### B. Jurisdiction Over Murder Charge

Both parties agree that federal jurisdiction over murder cases is established in 18 U.S.C. § 1111 which sets out the penalty for murder "within the special maritime and territorial jurisdiction of the United States," and that murder is "deemed to have been committed at the place where the injury was inflicted * * *, without regard to the place where the death occurs." 18 U.S.C. § 3236. Defendant argues that there was no substantial evidence that Williams' death was caused within the boundaries of Fort Leonard Wood.

Defendant's statement established that Williams was struck on the head at the Birdland Lounge located outside the boundaries of Fort Leonard Wood. If Williams died as a result of the head wound, regardless of where the death occurred, there was

no federal jurisdiction to hear the murder charge. If, on the other hand, Williams died of exposure after being left in the wooded area within the boundaries of Fort Leonard Wood, federal jurisdiction did exist. Thus federal jurisdiction depends in this case on the factual determination of the cause of death.

The jury was instructed by the district court as follows:

It is required that the United States prove beyond a reasonable doubt that the victim, Frederick Williams, died as a proximate result of exposure to the elements within the special maritime and territorial jurisdiction of the United States.

The jury found that Williams died of exposure within the boundaries of Fort Leonard Wood and convicted Todd of second degree murder.[4]

The government offered evidence of death by exposure in the form of testimony by Dr. Rappe and statements by the defendant. Dr. Rappe testified that it would have been very unusual if Williams had died immediately following the blow to his head and that assuming Williams was alive when he was placed in the woods at Fort Leonard Wood, considering the clothing Williams was wearing and the subfreezing temperature, Williams would have died of hypothermia (exposure). However, Dr. Rappe could not state with a reasonable degree of medical certainty that Williams did not die as a result of the head wound.

Defendant was asked when he made his statement "when they put Williams in the [blank][5] did he move or did you know that he was dead?" Todd answered, "Shannon said that he could be dead. I said that he wasn't and then Ward said that he wasn't dead and that he just hit him soft." Defendant argues that conflicting testimony by Dr. Rappe and the ambiguity in the

---

4. 18 U.S.C. § 1111 provides that premeditated murder is first degree murder and "any other murder is murder in the second degree."

5. The typed copy of defendant's statement contains a blank here. There was some dispute

about whether the omitted word was "car" or "woods" but the officer who questioned Todd testified at trial that the missing word was "woods."

question asked Todd as to whether Williams was dead when he was placed in the woods do not provide a sufficient basis for a jury determination of the cause of death beyond a reasonable doubt. We disagree.

■ It is for the jury to resolve questions about conflicting evidence and questions as to the weight and credibility of witnesses. *United States v. Parker*, 586 F.2d 1253, 1256 (8th Cir. 1978); *United States v. Turcotte*, 558 F.2d 893 (8th Cir. 1977). We find that there is substantial evidence to support the jury's finding that Williams died of exposure and thus we hold that there is federal jurisdiction over the murder charge.

*The Conspiracy Convictions*

A. *Conspiracy to Rob*

■ Defendant Todd was convicted of conspiracy to rob in violation of 18 U.S.C. § 371 and conspiracy to murder in violation of 18 U.S.C. § 1117. In reviewing the conspiracy convictions this court does not weigh the evidence or determine the credibility of the witnesses and the jury verdict "must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) (cited with approval in *Hamling v. United States*, 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974)); *United States v. Pintar*, 630 F.2d 1270, 1276 (8th Cir. 1980). We find under the substantial evidence standard that there is insufficient evidence to sustain the conviction of conspiracy to rob.

■ The government and the defendant agree that defendant's conviction cannot be based solely upon his out-of-court statements and that admissions of the defendant must be corroborated by independent evidence. *Wong Sun v. United States*, 371 U.S. 471, 488–89, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963). The rule regarding corroboration of defendant's statements is that "the corroborative evidence need not be sufficient, independent of the statements, to establish the *corpus delicti* [but must] tend to establish the trustworthiness of the

statement." *Opper v. United States*, 348 U.S. 84, 93, 75 S.Ct. 158, 164, 99 L.Ed. 101 (1954); and provide "substantial independent evidence that the offense has been committed * * *." *Smith v. United States*, 348 U.S. 147, 156, 75 S.Ct. 194, 199, 99 L.Ed. 1262 (1954); *Sansone v. United States*, 334 F.2d 287, 292 (8th Cir. 1964), *aff'd*, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965).

■■ This court has held that the corroborating evidence need not be criminal in and of itself and proof of one overt act, such as a phone call may be sufficient to corroborate a defendant's statement and thus support a conspiracy conviction. *United States v. McCarty*, 611 F.2d 220, 223 (8th Cir. 1979), *cert. denied*, 445 U.S. 930, 100 S.Ct. 1319, 63 L.Ed.2d 764 (1980). The government is required to present evidence which supports the essential facts admitted by the defendant to justify an inference of truth of the statement. *Sansone v. United States, supra*, 334 F.2d at 292. We take this to mean that the government must prove by independent evidence, the essential elements of the crime of conspiracy and may not simply corroborate elements of the statement which are unrelated to the conspiracy. We have previously held that to sustain a conviction of conspiracy there must be proof of an agreement among two or more persons and of an overt act in furtherance of the crime by at least one of the conspirators. *United States v. Wrehe*, 628 F.2d 1079, 1082 (8th Cir. 1980).

■ The defendant's statements establish an agreement among himself and three others to rob Williams at the Birdland Lounge. The government, however, has not presented any independent evidence that there was an agreement or that any steps were taken by the conspirators to rob Williams. The government did not even show that Todd knew the three alleged coconspirators, much less that he met with them or conspired with them. We recognize that conspiracy is difficult to prove because of the lack of a tangible *corpus delicti* and that thus "an agreement can be proven by means of circumstantial evidence[,]" *United States v. Taylor*, 599 F.2d

832, 838 (8th Cir. 1979), but here the government has failed to present any independent evidence of the conspiracy. We thus reverse the conviction of conspiracy to rob.

### B. Conspiracy to Murder

The government recognizes that neither of Todd's statements made any reference to a plan or agreement to murder Williams. The government's contention is that because Williams and the alleged conspirators were members of the same basic training company and because Todd stated that they intended to rob Williams, it is reasonable to assume that they planned also to murder him so that he would not identify them after the robbery. We are unaware of any case in which a court or jury was allowed to convict on the basis of inference alone.

The government has not presented an admission by the defendant of a conspiracy to murder; nor has it offered any evidence of an agreement between Todd and another person to murder Williams. Although the government is allowed to prove an agreement by circumstantial evidence, *United States v. Taylor, supra,* 599 F.2d at 838, here there is only speculation and inference. This court has said that the "[e]vidence must do more than merely raise suspicion of possibility of guilt. Surmise cannot be permitted in a criminal case." *United States v. Jones,* 545 F.2d 1112, 1115 (8th Cir. 1976), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977). We are not convinced that the evidence here was sufficient to prove beyond a reasonable doubt that Todd was involved in a conspiracy to murder Williams. We reverse the conviction of conspiracy to murder.[6]

### The Murder Conviction

Todd contends that there was insufficient evidence to establish guilt beyond a reasonable doubt of murder. The evidence offered by the government to prove murder included: (1) defendant's statements that Williams was hit on the head with a tire iron and left in a remote wooded area; (2) testimony that Williams' remains were found in the wooded area; (3) testimony by Dr. Rappe that the autopsy showed that Williams had suffered a severe blow to the head which had been inflicted by a long lean instrument, possibly a tire iron; and (4) extensive testimony by Dr. Rappe that Williams probably survived the blow and died later of exposure to freezing temperatures.

The defendant's admissions of the essential facts or elements of the crime in his statements are "of the same character as confessions" and thus corroboration is required. *Opper v. United States, supra,* 348 U.S. at 90, 75 S.Ct. at 163; *United States v. Delay,* 500 F.2d 1360, 1363 (8th Cir. 1974). The corroboration requirement in federal court was established in *Wong Sun v. United States, supra,* 371 U.S. at 489–90 n.15, 83 S.Ct. at 418 n.15:

> Where the crime involves physical damage to person or property, the prosecution must generally show that the injury for which the accused confesses responsibility did in fact occur, and that some person was criminally culpable. A notable example is the principle that an admission of homicide must be corroborated by tangible evidence of the death of the supposed victim. See 7 Wigmore, Evidence (3d ed. 1940), § 2072, n.5.

Here, there is tangible evidence of the circumstances of Williams' death and of Williams' death to sufficiently corroborate Todd's admission of the essential elements of the murder. The government has presented evidence that Williams died, that his remains were located in the exact spot described by Todd, and that an autopsy showed head injuries consistent with the description by Todd of Williams being struck with a tire iron. In addition, the government witness expressed his opinion that Williams died of exposure on the

---

**6.** In light of our reversal of both conspiracy convictions we find it unnecessary to address the issue of whether the government should have been required to elect between the two conspiracy charges.

government reservation. We find that there is sufficient corroborating evidence to support a jury verdict of guilty of second degree murder.

Reversed as to the conspiracy counts and remanded with directions to dismiss those counts. Affirmed as to the second degree murder count.