**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**G. Timothy MARSHALL,**
**Defendant–Appellant.**

**No. 87–4017.**

United States Court of Appeals,
Sixth Circuit.

Argued July 25, 1988.

Decided Dec. 20, 1988.

Gerald A. Messerman (argued), Gale S. Messerman, Messerman & Messerman Co., LPA, Cleveland, Ohio, for defendant-appellant.

William J. Edwards (argued), Asst. U.S. Atty., Carolyn Watts Allen, Cleveland, Ohio, for plaintiff-appellee.

Before MERRITT and KRUPANSKY, Circuit Judges; and BROWN, Senior Circuit Judge.

MERRITT, Circuit Judge.

In this direct criminal appeal, the primary issue is whether the District Court should have instructed the jury that it could not find the defendant guilty solely on the basis of defendant's uncorroborated

admissions. Cases from the Supreme Court, this circuit and other circuits indicate that a defendant's admissions, made after commission of an alleged offense, must be corroborated to guarantee reliability and trustworthiness. The District Court declined to give such an instruction. We, therefore, reverse and remand this case for a new trial.

On November 12, 1985, Robert Peluso, an informant for the Federal Bureau of Investigation and a former client of the defendant, visited defendant's law office and sought to sell him cocaine. While wearing a recording device, Peluso offered to sell Marshall a pound or a half pound of cocaine. As a sample, Peluso gave Marshall two grams of cocaine free and suggested that he try it. Tr. 331. Thereafter, the defendant did not purchase, accept or make any other drug transaction.

After accepting the sample, Marshall allegedly made a telephone call and arranged to meet people that evening. Marshall testified that he faked the telephone call to give Peluso the impression that he and some of his friends were interested in buying drugs. Tr. 337. Although Peluso tried to contact Marshall many times thereafter to interest him in cocaine, the only additional significant contacts are set out below.

The following day, November 13, Peluso visited Marshall's office, again wearing a recording device. The following conversation took place:

Peluso: So how'd you like that?

Marshall: [pointing to his nose] No, everything fine there.

Peluso: Okay.

Marshall: But had, had an opportunity that uh this one person they did it through a can.

Peluso: I don't know uh ...

Marshall: Yeah it just, the taste was there but the hit wasn't but it could have been because it was the can cause they didn't have (unintelligible)

Peluso: Oh they didn't have a pipe?

Marshall: No. So that coulda been, that coulda been the problem there.

Peluso: I'm tellin' ya the stuff is, it's un, it's unwacked.

Marshall: I've got three. I've got three people, okay the one guy was gonna meet me last night but I, I had to judge a beauty contest at Chicago's on Center Ridge Road so uh but it's, it's there. As long as, if everything's decent.

App. 147; Tr. 184.

On November 22, Peluso told Marshall that he had a good deal. Peluso said that he could sell Marshall a half pound of cocaine and he would not expect payment until a week to ten days. Marshall rejected this offer. There were no meetings after this date between Peluso and Marshall, and they never arranged a drug purchase.

On April 11, 1986, Marshall was indicted on five counts: (1) conspiring to distribute cocaine and to possess cocaine with intent to distribute; (2) distributing cocaine; and (3) three counts of using a telephone to facilitate acts in violation of 21 U.S.C. §§ 846 and 841(a)(1). App. 6. After a jury trial, Marshall was found not guilty of the conspiracy count, and guilty of all other counts.

The primary issue in this case centers on count two of the indictment: *distribution* of two grams of cocaine on November 12. The government's only evidence that distribution may have occurred on that day is the defendant's ambiguous November 13 statements. Marshall contends that the District Court erred when it refused to instruct the jury that it could not find him guilty of count two simply on the basis of the uncorroborated November 13 admissions. Defendant requested an instruction on this point, citing *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954), and *United States v. Pennell*, 737 F.2d 521 (1984), *cert. denied*, 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985). R. 31 at 10. The District Judge refused to give the instruction. Tr. 468–69.

In *Opper v. United States*, 348 U.S. 84, 90, 75 S.Ct. 158, 163, 99 L.Ed. 101 (1954), the Supreme Court held: "We think that an accused's admissions of essential facts or elements of the crime, subsequent to the crime, are of the same character as confes-

sions and that corroboration should be required." The purpose for corroboration, as explained in *Smith v. United States,* 348 U.S. 147, 153, 75 S.Ct. 194, 197, 99 L.Ed. 192 (1954), is to "prevent 'errors in convictions based upon untrue confessions alone.'" (citing *Warszower v. United States,* 312 U.S. 342, 347, 61 S.Ct. 603, 606, 85 L.Ed. 876 (1941)). The Court explained that the corroboration principle is rooted in "a long history of judicial experience with confessions and in the realization that sound law enforcement requires police investigations which extend beyond the words of the accused." *Smith,* 348 U.S. at 153, 75 S.Ct. at 197. In *Wong Sun v. United States,* the Court stated:

> It is a settled principle of the administration of criminal justice in the federal courts that a conviction must rest upon firmer ground than the uncorroborated admission or confession of the accused.

371 U.S. 471, 488–89, 83 S.Ct. 407, 418, 9 L.Ed.2d 441 (1963).

This Circuit has long followed the principle enunciated in *Opper* and *Smith,* that a defendant's extrajudicial, post-offense statements must be corroborated with independent evidence in order to assure reliability and truthfulness. *United States v. Trombley,* 733 F.2d 35, 37 (1984); *United States v. Pennell,* 737 F.2d at 537; *United States v. Daniels,* 528 F.2d 705, 707–08 (1976); *United States v. Davis,* 459 F.2d 167, 170–71 (1972); *United States v. Crowder,* 346 F.2d 1, 5 (1965), *cert. denied,* 382 U.S. 909, 86 S.Ct. 249, 15 L.Ed.2d 161 (1965). Every other circuit has adhered to this principle. *See Fallada v. Dugger,* 819 F.2d 1564, 1570 (11th Cir.1987); *United States v. Ianniello,* 808 F.2d 184, 194–95 (2d Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 3229, 97 L.Ed.2d 736 (1987); *United States v. Taylor,* 802 F.2d 1108, 1116–17 (9th Cir.1986), *cert. denied,* 479 U.S. 1094, 107 S.Ct. 1309, 94 L.Ed.2d 164 (1987); *Gov. of Virgin Islands v. Hoheb,* 777 F.2d 138, 141 (3rd Cir.1985); *United States v. Garth,* 773 F.2d 1469, 1479 (5th Cir.1985), *cert. denied,* 476 U.S. 1140, 106 S.Ct. 2246, 90 L.Ed.2d 693 (1986); *United States v. Roth,* 777 F.2d 1200, 1206 (7th Cir.1985); *United States v. Todd,* 657 F.2d

212, 217–18 (8th Cir.1981), *cert. denied,* 455 U.S. 926, 102 S.Ct. 1288, 71 L.Ed.2d 469 (1982); *United States v. Johnson,* 589 F.2d 716, 718 (D.C.Cir.1978); *United States v. Henderson,* 467 F.2d 904, 906 (10th Cir. 1972); *United States v. Hall,* 396 F.2d 841, 844–45 (4th Cir.), *cert. denied,* 393 U.S. 918, 89 S.Ct. 248, 21 L.Ed.2d 205 (1968); *see also United States v. O'Connell,* 703 F.2d 645, 647–48 (1st Cir.1983).

Courts have held that proof that the criminal act took place—the so-called "corpus delicti"—will satisfy the corroboration requirement. *See United States v. Opdahl,* 610 F.2d 490, 492–93 (8th Cir.1979), *cert. denied,* 444 U.S. 1091, 100 S.Ct. 1056, 62 L.Ed.2d 780 (1980); *United States v. Leavitt,* 608 F.2d 1290, 1292 (9th Cir.1979); *United States v. Johnson,* 589 F.2d at 718–19; *United States v. Joseph,* 333 F.2d 1012, 1013 (6th Cir.), *cert. denied,* 379 U.S. 915, 85 S.Ct. 263, 13 L.Ed.2d 186 (1964). In cases where there is no clear proof of the corpus delicti, courts have required independent evidence corroborating defendant's statements. *Wong Sun,* 371 U.S. at 489 n. 15, 83 S.Ct. at 418 n. 15; *Smith,* 348 U.S. at 154, 75 S.Ct. at 198; *United States v. Fearn,* 589 F.2d 1316, 1322 (7th Cir.1978).

This Circuit's opinion in *Trombley* is in point. A defendant was charged with transporting a stolen vehicle in interstate commerce. 733 F.2d at 36. In a recorded conversation with an undercover FBI agent, defendant admitted traveling from Michigan to Texas in a car she knew was "hot." *Id.* We stated: "[T]he government must introduce independent evidence to establish the trustworthiness of a defendant's statement." *Id.* at 37. In *Trombley,* as in this case, the defendant's recorded, post-offense statement to an undercover agent discussing an essential element of the crime, required corroboration to establish trustworthiness and reliability.

The need for corroboration is apparent in this case for two reasons. First, the crime of distribution of cocaine may not have occurred. The so-called "corpus delicti" has not been established independently of defendant's statement. *See Smith,* 348 U.S. at 154, 75 S.Ct. at 198. Second, Mar-

shall claims that his statements were false and that he did not distribute any of the cocaine Peluso gave him. He claims he was simply trying to get rid of his former client Peluso. Independent corroborating evidence is, therefore, necessary to establish the reliability of the statements.

The record reveals some evidence which may tend to corroborate defendant's statements that he distributed cocaine, but the jury was never advised that corroboration was necessary. It may have convicted on the basis of the uncorroborated statement alone. The District Court's refusal to give the requested corroboration instruction was erroneous, and we are unable to say it was harmless. Since the three facilitation counts are closely connected with the distribution count because the November 12th distribution appears to be the only crime which the telephone communications could have facilitated, we must reverse and remand for a new trial on all counts.

KRUPANSKY, Circuit Judge, dissenting.

Because the majority has ignored Supreme Court precedent and this circuit's pronouncements and has incorrectly applied the doctrine of corroboration as it applies to unsolicited admissions, I respectfully dissent.

A federal grand jury had charged the defendant, G. Timothy Marshall (Marshall), on April 11, 1986 in a five count indictment: one count charged defendant with conspiring with another individual unknown to the grand jury with possession of cocaine with intent to distribute it, and distribution of cocaine in violation of 21 U.S.C.A. § 841(a)(1) and 846 (West 1981); the second count charged that the defendant had knowingly and intentionally distributed cocaine in violation of 21 U.S.C.A. § 841(a)(1); and the last three counts charged that Marshall had knowingly and intentionally used a telephone to facilitate acts constituting a felony on three separate occasions in violation of 21 U.S.C.A. § 841(a)(1) and 843(b).

Testimony elicited from witnesses during Marshall's jury trial disclosed the following factual scenario. On June 28, 1985, Marshall had a serendipitous encounter with Robert Peluso (Peluso), an undercover FBI informer, at Cici's Restaurant in Parma, Ohio. During the course of the meeting, Marshall advised Peluso that his cocaine supplier was not making scheduled deliveries, and inquired if Peluso could secure between one and a half and two pounds of cocaine for him.

Peluso reported his conversation with Marshall to an FBI agent who directed Peluso to continue his contact with the defendant. On September 18, 1985, Peluso visited Marshall's law office, and advised Marshall that he could sell him one-half pound of cocaine for $900 an ounce or any lesser amount for $1200 per ounce. Marshall told Peluso that he would confer with one of his friends to determine how much cocaine would be purchased and he would recontact Peluso. The conversation was recorded by Peluso.

After the passage of two weeks, Peluso received a message on his telephone pager from the defendant requesting that Peluso contact him. Peluso thereupon called Marshall from a telephone booth, at which time Marshall told him that he was desirous of buying cocaine as soon as Peluso could accommodate him.

On November 12, 1985, Peluso again met with Marshall in his law office, recording the conversation with a concealed device. At that time, Peluso supplied Marshall with a two gram sample of cocaine, and advised him that he had set aside one pound of the cocaine for sale to Marshall at a price of $1200 per ounce. In response to Marshall's inquiry, Peluso assured him that the cocaine was uncut. Marshall again advised that he would discuss the sale with his friends.

Peluso asked Marshall if he could distribute as much as a pound of cocaine. Marshall indicated that he would do so if he could contact his distribution contact. Marshall then made a telephone call to an unidentified individual, advising the person of the availability of the cocaine and arrang-

ing a meeting for that evening.[1]

The next day, November 13, 1985, the two met again in the defendant's office; Peluso again recorded the conversation that transpired. During the ensuing conversation, Marshall made the following statement which the jury could have credited as demonstrating that he had distributed the two grams of cocaine which Peluso had given to him on November 12th. "But had, had an opportunity that uh *this one person they did it through a can....* Yeah it just, the taste was there but the hit wasn't but it could have been because it was the can cause *they* didn't have [a pipe]." (emphasis added).

A short time later, Marshall requested additional cocaine from Peluso, stating "that was good enough for what you do for me, what for an eight for me, so I can give it to my one guy, let him try it." Later that same day, Peluso informed Marshall that he could not obtain any additional samples of cocaine. Marshall directed Peluso to hold one-half a pound of cocaine for him.

Peluso next contacted Marshall on November 22nd in the defendant's office, at which time Peluso advised the defendant that his supplier was back with another supply of cocaine. After discussing the amount of cocaine that was available, Marshall offered to purchase a small amount. After negotiating the price for various quantities, they agreed that if Peluso should obtain the cocaine, he would contact Marshall by telephone at the Iron Horse Restaurant. Later that evening, Peluso called Marshall at the Iron Horse Restaurant as previously planned, and arranged a meeting within a half hour at the Sweetwater Cafe. During the meeting, Peluso

agreed to provide one-half pound of cocaine for Marshall, for which Marshall would pay within one week to ten days after delivery. The payment arrangements were unacceptable to Marshall and the offer was rejected. Peluso and Marshall had no further contact after November 22, 1985.

The jury convicted the defendant on the second count, for distribution of cocaine, and on the third, fourth and fifth counts, charging use of a telephone to facilitate a felony. The jury acquitted Marshall on count one, the conspiracy charge. The defendant timely appealed his convictions.

The majority has concluded that Marshall's conviction on the substantive count of distributing cocaine must be reversed and remanded for a new trial because the government had relied solely upon the uncorroborated statements made by the defendant to the FBI informant, Peluso. The majority has relied upon the general rule that the admissions of a criminal defendant which were obtained subsequent to the completion of a criminal act must be corroborated by some independent evidence to insure the reliability of that defendant's statements. *See, e.g., Opper v. United States*, 348 U.S. 84, 90, 75 S.Ct. 158, 163, 99 L.Ed. 101 (1953). In the instant case, the majority has concluded that because Marshall's conviction for distribution of cocaine on November 12, 1985 relied upon statements which the defendant made to Peluso on November 13th, during the perpetration of the criminal acts, the teachings of *Opper* and its progeny would dictate that Marshall's conviction of the distribution charge be reversed and remanded for a new trial.

---

**1.** The majority notes that Marshall testified that he had not actually placed the telephone call, but had merely pretended to do so in order to placate Peluso and to persuade him to leave his office. The recording device, which Peluso was wearing concealed on his person, captured the "conversation" on Marshall's end of the telephone and the government introduced this conversation into evidence at the trial. Peluso also testified that the telephone conversation had taken place. On apellate review of a criminal conviction, this court must view the evidence presented at trial in the light most favorable to the government, *Jackson v. Virginia,* 443 U.S.

307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Chandler,* 752 F.2d 1148, 1152 (6th Cir.1985), and must give the government the benefit of all inferences which can reasonably be drawn from the evidence. *United States v. Adamo,* 742 F.2d 927, 932 (6th Cir.1984), *cert. denied sub nom. Freeman v. United States,* 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed. 2d 975 (1985). As a consequence, this court must assume that Marshall did in fact place a telephone call from his office to an unknown individual during the November 12th meeting with Peluso.

The requirement that statements made by a criminal defendant be corroborated applies only to statements made *after* the criminal activity has been concluded. *See Opper,* 348 U.S. at 90, 75 S.Ct. at 163 ("We think that an accused's admission of essential facts or elements of the crime, *subsequent to the crime,* are of the same character as confessions and that corroboration should be required.") (emphasis added); *United States v. Trombley,* 733 F.2d 35, 37 (6th Cir.1984) ("The Supreme Court further held in *Smith v. United States,* 348 U.S. 147, 155, 75 S.Ct. 194, 198, 99 L.Ed. 192 (1954) that the corroboration rule was applicable not only to confessions but also to mere admissions *where the admission is made after the fact....*") (emphasis added). This circuit has recognized that admissions made "before, or *during the commission of, a crime* ... need not be corroborated." *United States v. Pennell,* 737 F.2d 521, 537 (6th Cir.1984) (emphasis added), *cert. denied,* 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985). "The rationale underlying this rule is that out-of-court admissions occurring after a crime has been completed are less reliable than similar admissions made beforehand." *Pennell,* 737 F.2d at 537.

> The rule requiring corroboration of statements made after the fact stems from the need to avoid convictions based on confessions induced or coerced during police investigations, or on other involuntary statements made during that stressful and confused time. *Smith v. United States,* 348 U.S. 147, 153, 75 S.Ct. 194, 197, 99 L.Ed. 192 (1954). In contrast, admission made while the crime is in progress bear none of these indicia of unreliability.

*Government of the Virgin Islands v. Hoheb,* 777 F.2d 138, 142 (3rd Cir.1985). In the case at bar, Marshall was charged not merely with distribution of cocaine, but also with conspiracy to possess and distribute cocaine during the period of time from June 28, 1985 until November 22, 1985.

In *Warszower v. United States,* 312 U.S. 342, 347, 61 S.Ct. 603, 606, 85 L.Ed. 876 (1941), the United States Supreme Court indicated that admissions made during the course of a conspiracy "need [not] be corroborated [because] [t]hey contain none of the inherent weaknesses of confessions or admissions after the fact." The federal courts of appeals, including this circuit, have consistently applied the Supreme Court's mandate in *Warszower* in subsequent criminal conspiracy cases. *See, e.g., Pennell,* 737 F.2d at 537 ("Since th[e] statement was made before the completion of the criminal acts *for which he was charged* [including a conspiracy count], the statement did *not* have to be corroborated.") (emphasis added); *see also Hoheb,* 777 F.2d at 142 ("[A]dmissions made before a crime occurred need not be corroborated, and ... recent cases have extended this holding to apply to statements made during the course of a conspiracy."); *United States v. Soteras,* 770 F.2d 641, 644 n. 4 (7th Cir. 1985) (No corroboration required for statement "made during the course of the conspiracy rather than after it was over.... The rule of corroboration exists to prevent errors in convictions based upon untrue confessions alone, whether voluntary or involuntary.... The rule thus does not apply to statements made prior to or during the commission of the crime, when that danger does not exist.") (citations omitted); *United States v. Head,* 546 F.2d 6, 9 (2nd Cir.1976) ("The admissions made by [the criminal defendant] in his taped conversation ... were made during the course of the alleged conspiracy, rather than after its consummation, and may be sufficient to establish [his] guilt even without corroboration."), *cert. denied sub nom. Wheaton v. United States,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977); *Buford v. United States,* 272 F.2d 483, 486 n. 1 (8th Cir.1959) ("Because appellant's admissions in this case were made during the course of the crime rather than after its consummation, they may suffice to convict, even though they are uncorroborated, if they establish the crime charged."). Because the admissions at issue in the instant case were made during the course of the alleged conspiracy, the Supreme Court's holding in *Warszower* instructs that no independent corroboration of the statements made by defend-

ant was necessary to sustain the jury's conviction of the defendant on the charge of distributing cocaine, and accordingly the defendant's conviction on this count should be AFFIRMED.

Although I disagree with the majority's conclusion regarding the need for corroboration of Marshall's admissions during the November 12, 1985 conversation, I do, however, agree with the majority's determination that Marshall's convictions on three counts of using a telephone to facilitate the commission of a felony must be reversed, albeit for a different reason than that expressed by the majority.[2] In the case at bar, the district court failed to instruct the jury on an essential element of an offense of facilitating the commission of a felony under 21 U.S.C.A. § 843(b).[3] As this court has recently observed, "[a] charge under § 843(b) ... requires ... that the government prove the commission of an underlying offense.... [T]o prove facilitation of "possession and distribution of [cocaine]" the government "must prove the completed object." *United States v. McGhee*, 854 F.2d 905, 908 (6th Cir.1988) (quoting *United States v. Rey*, 641 F.2d 222, 224 n. 6 (5th Cir. Unit A March 30, 1981), *cert. denied*, 454 U.S. 861, 102 S.Ct. 318, 70 L.Ed.2d 160 (1981)).

Although a "prima facie case need not include proof that the defendant [himself] committed the underlying offense," *United States v. Ward*, 696 F.2d 1315, 1319 (11th Cir.) (citing *Rey*, 641 F.2d at 227 n. 10), *cert. denied*, 461 U.S. 934, 103 S.Ct. 2101, 77 L.Ed.2d 308 (1983), the language of § 843(b) requires "whatever underlying offense is charged must be proved by a preponderance of the evidence, even though it

is not separately charged." *Rey*, 641 F.2d at 224 n. 6; *accord United States v. Powell*, 469 U.S. 57, 60 n. 4, 105 S.Ct. 471, 474 n. 4, 83 L.Ed.2d 461 (1984) ("[T]he Government must prove, as an element of a § 843(b) offense, the commission of the felony that the accused is charged with facilitating.") (dictum); *see also United States v. Johnstone*, 856 F.2d 539, 543 (3rd Cir. 1988) ("The occurrence of the underlying felony is a fact necessary to finding a violation of § 843(b)."); *United States v. Watson*, 594 F.2d 1330, 1342–44 (10th Cir.), *cert. denied sub nom. Brown v. United States*, 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed. 2d 51 (1979); *United States v. Thomas*, 586 F.2d 123, 130–31 (9th Cir.1978); *United States v. Hannah*, 584 F.2d 27, 28–30 (3rd Cir.1987); *United States v. Pierorazio*, 578 F.2d 48, 50–51 (3rd Cir.), *cert. denied*, 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 652 (1978).

In the instant case, the district court failed to instruct the jury that it was necessary to find that the underlying felony had in fact been committed in order to convict Marshall on the facilitation counts. "The failure to instruct on an essential element of an offense ... was plain error and requires reversal of the convictions." *United States v. Pope*, 561 F.2d 663, 671 (6th Cir.1977) (citations omitted); *see also United States v. O'Dell*, 462 F.2d 224, 232 (6th Cir.1972) ("Generally the failure of a District Judge to set forth clearly one of the essential elements of an offense creates such a significant flaw in the trial process as to require reversal of any convictions obtained for the offense involved."); *United States v. Bryant*, 461 F.2d 912, 921 (6th Cir.1972) ("It is a grave error to submit the

2. The majority concluded that Marshall's conviction on the three facilitation counts must be reversed and remanded for a new trial because the charges were closely connected to the substantive count of distributing cocaine, which the majority would reverse on the basis that Marshall's admissions to the FBI informant, Peluso, were not properly corroborated.

3. The facilitation statute reads:
   It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts con-

stituting a felony under any provision of this subchapter or subchapter II of this chapter. Each separate use of a communications facility shall be a separate offense under this subsection. For purposes of this subsection, the term "communications facility" means any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communications.
21 U.S.C.A. § 843(b) (West 1981).

case without accurately defining the offense charged and its elements."); *see generally* 2 C. Wright & A. Miller, *Federal Practice and Procedure* § 487, at 723 (1982).

Nor can it be assumed that the district court's error was harmless in this instance beyond a reasonable doubt simply because the defendant was convicted of the substantive offense of distributing cocaine. "[W]hen an instruction prevents the jury from considering a material issue, it is equivalent to a directed verdict on that issue and therefore cannot be considered harmless." *Hoover v. Garfield Heights Municipal Court*, 802 F.2d 168, 177 (6th Cir.1986), *cert. denied*, 480 U.S. 949, 107 S.Ct. 1610, 94 L.Ed.2d 796 (1987); *accord United States v. Mentz*, 840 F.2d 315, 323–24 & nn. 17–18 (6th Cir.1988). In its instructions to the jury, the district court indicated that it could convict the defendant on these counts if his use of a telephone had facilitated either "a willful and intentional distribution of cocaine or a willful and intentional possession with intent to distribute [cocaine]." Because the jury returned a general verdict of guilty on the three facilitation counts, it is impossible to determine on appeal whether the jury concluded that Marshall's actions had facilitated the distribution of cocaine for which he was tried and convicted, or the possession of cocaine for which he was neither charged nor convicted. *Compare Johnstone*, 856 F.2d at 545 (failure to correctly instruct jury concerning the government's duty to prove the commission of the underlying offense under § 843(b) was harmless since the defendant was convicted of the only predicate offense charged under § 843(b)). Accordingly, the three counts of using a telephone to facilitate the commission of a felony must be REVERSED and REMANDED for a new trial.