IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 27, 2021

**DELSHUN JONES v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
No. 12-04777          Glenn Ivy Wright, Judge

———————————————————

**No. W2020-00994-CCA-R3-PC**

———————————————————

Petitioner, Delshun Jones, appeals from the denial of his petition for post-conviction relief, in which he alleged that he received ineffective assistance of counsel at trial. Following an evidentiary hearing, the post-conviction court denied the petition. Having reviewed the entire record and the briefs of the parties, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Post-Conviction Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J. ROSS DYER, JJ., joined.

Terrell L. Tooten, Cordova, Tennessee, for the appellant, Delshun Jones.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Trial*

The facts underlying Petitioner's conviction were summarized by a panel of this Court on direct appeal. *State v. Delshun Jones*, No. W2015-00156-CCA-R3-CD, 2016 WL 1563087, at *1-5 (Tenn. Crim. App. Apr. 15, 2016), *perm. app. denied, not for citation* (Tenn. Sept. 23, 2016). Petitioner was charged with the shooting death of the victim, Samuel Wilkes, Jr., "outside a birthday party on Easter Sunday, April 8, 2012." *Id*. at *1.

Four people who attended the party testified that they heard Petitioner admit to having shot the victim.

The birthday party was for the son of Tina Jones. Ms. Jones testified that she was standing on the porch when Petitioner drove up and asked for Marco Crawford. She saw Petitioner and Mr. Crawford walk down the driveway together, and she went back inside. She testified that "[s]ometime later, the children ran into the house and told her that someone was shooting outside." *Id*. at *2. Mr. Crawford testified that he spoke to Petitioner, and Petitioner told him that he wanted to "get up" or "catch up" with the victim. *Id*. Ashlye Bowden testified that she saw Petitioner outside the party in his car at around 3:30 that afternoon.

Later that evening, at around 11:00 p.m., Ms. Bowden, Eric Velez, and Tina Jones went with Ms. Bowden's brother, Marco Crawford, to Mr. Crawford's grandmother's house in Mr. Velez's truck. *Id*. at *1. When they arrived, Mr. Crawford went inside while the others remained in the vehicle. While Mr. Crawford was inside, Petitioner approached the truck and told them that he had shot the victim five times. *Id*. Petitioner said, "I had to get him, bro. The n**** called my phone wolfing up at me something about you know what I say – I stay. I caught him loafering. I told my n**** lean back and popped his ass five times." *Id*. Petitioner said that the victim told him, "[N]**** you know where I stay at." *Id*. Petitioner did not say why he shot the victim, only that the victim had called him and they had argued over the phone. *Id*. Ms. Bowden testified that Petitioner was bragging. *Id*.

Mr. Velez testified that Petitioner told him that "he rode up on [the victim], got his attention. I guess he looked down. He let five shots go. Said he wanted to get out and continue I guess to shoot him." *Id*. at *2. Ms. Jones testified that she heard Petitioner say, "When I seen [the victim] walk down the driveway and I hollered hey, and he bent down and looked and I shot him." Ms. Jones testified that Petitioner did not say why he shot the victim, but that he elaborated that "[h]e shot [the victim] four times and he wanted to stand over and keep shooting him." *Id*. When interviewed by police, Petitioner denied any involvement in the shooting. He denied having known the victim and having ever been in the area of the shooting. *Id*. at *4. Cell phone records indicated that several calls were made between Petitioner and the victim shortly before the shooting. *Id*.

Carl Allen, a former cellmate of Petitioner and a "jailhouse lawyer," testified that Petitioner admitted to him that he saw the victim leaving the birthday party and that he shot the victim with a .40 caliber pistol while the victim was sitting in a parked vehicle. *Id*. at *3. Mr. Allen testified that Petitioner told him what happened "in a bragging tone and 'wasn't worried about the case to the degree that he felt like he would be convicted of it.'" *Id*. Mr. Allen acknowledged that he sent a letter to the prosecutor in Petitioner's case

offering to testify against Petitioner, as well as another inmate. He testified that although he "hope[d] to get some type of leniency . . . as a result of coming forward," the prosecutor "ha[d] made it clear that there [were] no agreements in exchange for [his] testifying." *Id*.

Based on the proof presented at trial, a jury convicted Petitioner of first degree premeditated murder. The trial court sentenced Petitioner to life imprisonment. A panel of this Court affirmed Petitioner's conviction and sentence on direct appeal. *Id*. at *1.

### *Post-conviction Proceeding*

Petitioner timely filed a pro se petition seeking post-conviction relief, alleging that he received ineffective assistance of counsel at trial. Petitioner was appointed post-conviction counsel, and he filed an amended petition. Petitioner alleged that: 1) trial counsel "failed to file a timely [m]otion to [s]uppress the evidence surrounding the cell phone records prior to trial"; 2) trial counsel was ineffective for failing to request a special jury instruction that the State must prove corroboration of Petitioner's statements; 3) the trial court's instruction to the jury on premeditation was improper; 4) Petitioner "was excluded from proceedings involving witness Marco Crawford[,]" a witness for the prosecution at Petitioner's trial, and the jury should have been instructed as such "so that the jurors could have had a meaningful way to evaluate and weigh the evidence in [Petitioner's] case; 5) "the trial court . . . allowed information regarding a crime stopper tip[,]" and the jury should have been instructed "that it was hearsay"; and 6) Petitioner was denied due process of the law because the prosecutor failed to disclose its agreement with Carl Allen, a key witness against Petitioner.

At the evidentiary hearing, trial counsel testified that he was retained to represent Petitioner at trial. At the time of Petitioner's trial, counsel had been practicing law for 37 years and had handled "[d]ozens" of first degree murder cases. Trial counsel testified that his strategy was "[t]o try to have him acquitted" and "our defense was that he was not responsible[.]" Trial counsel had not reviewed his file and did not recall much about Petitioner's trial and "defer[red] to the record" many times throughout his testimony at the post-conviction hearing. Trial counsel did not recall requesting any specific jury instructions in Petitioner's case, but counsel acknowledged, "[I]f the instruction was faulty, I should've made an objection."

Trial counsel recalled that Mr. Allen had "a lengthy criminal record and a good number of cases either pending or a number of cases that he was doing time on, one or the other." During his cross-examination of Mr. Allen, trial counsel tried to show "his bias in regard to a motive to tell a falsehood to try to gain favor for himself." Trial counsel recalled that Mr. Allen had gained access to Petitioner's discovery material, but trial counsel could not recall whether he questioned Mr. Allen about his access to Petitioner's discovery

material or whether Mr. Allen received a deal from the State in exchange for his testimony. Trial counsel testified, "[I]t is commonplace in Shelby County practice that when an individual cooperates with the State that there is no firm deal in place. Even though there's no firm deal in place, the argument is that there is a hope for a deal." Trial counsel testified, "I believe that I asked if there were any deals and was told no." Trial counsel recalled that Mr. Allen was released from incarceration "some time later" after he testified against Petitioner.

Petitioner testified that he believed that Mr. Allen entered into a plea deal with the State in exchange for his testimony at Petitioner's trial. Petitioner testified Mr. Allen was a "jailhouse attorney" and that while they were incarcerated together, Mr. Allen requested to see Petitioner's discovery materials. Petitioner acknowledged that Mr. Allen filed a motion to dismiss on Petitioner's behalf. Petitioner believed that Mr. Allen based his testimony on what he learned from Petitioner's discovery file and not what Petitioner told him about the case. Petitioner could not "specifically say what happened with [Mr. Allen's] charges," but Petitioner recalled that Mr. Allen "was released right after [Petitioner] lost at trial."

### *Post-conviction Court's Findings and Conclusions*

In a written order denying relief, the post-conviction court addressed each of Petitioner's multiple claims of ineffective assistance of counsel and instances of alleged trial court errors. Regarding Petitioner's claim that trial counsel failed to request a jury instruction that the State was required to corroborate Petitioner's confession, the post-conviction court noted, "While there must be corroboration of a defendant's confession, this threshold is low." The post-conviction court found that the State introduced sufficient evidence to corroborate Petitioner's confession and that "it was up to the jury to determine whether to believe Petitioner's statements." The post-conviction court also noted that the trial court instructed the jury that it was up to the jury to determine what weight it should give Petitioner's statement. The court found, "[w]hile this is not the exact jury instruction that [P]etitioner asserts should have been requested, this instruction properly informs the jury that it is the jury's decision to determine the truth of Petitioner's statements."

The post-conviction court addressed Petitioner's allegation that the following instruction to the jury on premeditation was improper: "If the design to kill was formed with premeditation, it is immaterial that the accused may have been in a state of passion or excitement when the design was carried into effect." The post-conviction court found that Petitioner mischaracterized the instruction and that, "[t]aken as a whole," the instruction on premeditation "inform[ed] the jury that it [wa]s to consider whether the accused had the intent to kill the victim prior to the act itself" and "that excitement or passion does not erase a presently held intent to kill that was formed before the act occurred." The post-conviction

court found that the instruction was a settled principle of law, followed the Tennessee Pattern Jury Instructions, and did not mislead the jury.

Regarding Petitioner's allegation that trial counsel was ineffective for failing to file a pretrial motion to suppress his cell phone records, the post-conviction court found that trial counsel made an oral motion, although untimely, to suppress the records, and the trial court heard arguments on the issue. The issue was also raised on direct appeal, and a panel of this Court concluded that the introduction of the cell phone records did not prejudice Petitioner because they were introduced only to show "when calls were made to and from various phone numbers, as well as the probable directions the calls were coming from and received." *Delshun Jones*, 2016 WL 1563087, at \*9. Regarding Petitioner's claim that the jury should have been instructed that "the cell phone records in this case were obtained contrary to the law," the post-conviction court found "no basis under the law for issuing such an instruction." The court additionally found no basis in the law for a jury instruction that Petitioner was excluded from proceedings involving Marco Crawford. The court again noted that the jury was properly instructed that it was to determine the weight of all the evidence. Regarding Petitioner's claim that the jury should have been instructed that one of the witness's statement was hearsay and should not have been used to determine Petitioner's guilt, the post-conviction court found that there was again no basis in the law for giving such an instruction because "[w]hether a statement is hearsay is a legal question determined by the trial court."

Regarding Petitioner's allegation that he was denied a fair trial because the State failed to disclose its agreement with the State's witness Carl Allen, the post-conviction court found that Petitioner presented no proof at the post-conviction hearing that an agreement between the State and the witness existed. The court found, "Petitioner only presented his belief that there was an agreement because the witness, who was in custody at the time of Petitioner's trial, was released shortly after the witness testified."

The post-conviction court concluded that Petitioner failed to establish that trial counsel's performance was deficient or that Petitioner was prejudiced by trial counsel's alleged deficiencies. This appeal followed.

### *Analysis*

On appeal, Petitioner contends that the post-conviction court erred by denying his petition. He asserts that his trial counsel was ineffective and complains about several of the trial court's jury instructions. The State responds that the evidence supports the post-conviction court's denial of relief.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id*. § 40-30-110(f). A post-conviction court's findings of fact are binding on appeal, and this Court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

*Jury Instructions*

Petitioner contends that his trial counsel should have requested several special jury instructions, including an instruction on corroboration of Petitioner's statements; an instruction on the admissibility of cell phone evidence; an instruction regarding Petitioner's exclusion from Marco Crawford's criminal proceedings; and an instruction that a witness's testimony about a crime stopper tip was hearsay. Petitioner also challenges the trial court's instruction on premeditation.

A trial court in a jury case is obliged to provide a "complete charge of the law applicable to the facts of a case." *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986); *see also* Tenn. R. Crim. P. 30(d)(2). "'Jury instructions must be reviewed in their entirety. Phrases may not be examined in isolation.'" *State v. James*, 315 S.W.3d 440, 446 (Tenn. 2010) (quoting *State v. Rimmer*, 250 S.W.3d 12, 31 (Tenn. 2008)). A charge "is erroneous if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *James*, 315 S.W.3d at 446 (quoting *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn.1997)). Whether a conviction should be reversed on the basis of an erroneous jury instruction is determined by "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Rimmer*, 250 S.W.3d at 31.

Petitioner has not shown that the jury instructions failed to fairly submit the legal issues or were misleading to the jury. The post-conviction court noted that Petitioner "mischaracterized" the instruction on premeditation and that, when "[t]aken as a whole," the premeditation instruction "inform[ed] the jury that it [wa]s to consider whether the accused had the intent to kill the victim prior to the act itself."[1] Petitioner asks this Court to examine a phrase in isolation. The post-conviction court properly reviewed the instruction in its entirety and concluded that the instruction conveyed a "settle[d] principle of law[,]" citing *Baxter v. State*, 503 S.W.2d 226, 229 (Tenn. Crim. App. 1973 (holding if premeditation exists, it is immaterial that the defendant was in a passion when that design was executed.). The post-conviction court explained, "[t]his instruction informs the jury that excitement or passion does not erase the presently held intent to kill that was formed before the act occurred."

Next, Petitioner asserts that trial counsel was ineffective for failing to request a jury instruction that the State is required to prove corroboration of Petitioner's statements. The post-conviction court found that the State introduced sufficient evidence to corroborate Petitioner's statements, noting that the State "only needs slight evidence to corroborate a defendant's statement." The court found that in addition to Petitioner's statements, the State introduced testimony from "witnesses [who] identified Petitioner and stated that he

---

[1] We note that the jury instructions are not included in the record before us; however, the post-conviction court's order states the full instruction on premeditation.

- 7 -

was in the vicinity at the time of the incident." The court also found that the jury was specifically instructed,

> [I]f an oral or written statement given by the defendant has been proven in this case, you may take it into consideration with all the other facts and circumstances proven in the case. In considering the statement, it is for you, the Jury, to say what weight you will give the statement. You may believe any part of the statement or disbelieve any part of it, and you may believe the whole statement, or disbelieve it in its entirety.

We recognize, as did the post-conviction court, that the instruction above does not instruct the jury that a defendant's extrajudicial statement must be corroborated by independent proof. Tennessee follows "the long-established common-law rule that a person cannot be convicted of a crime solely on the basis of an uncorroborated extrajudicial confession." *State v. Frausto*, 463 S.W.3d 469, 479-80 (Tenn. 2015). Adequate corroboration must satisfy the modified trustworthiness standard. *State v. Bishop*, 431 S.W.3d 22, 59-60 (Tenn. 2014). Under this standard, an offense involving a tangible injury requires the State to provide "substantial independent evidence tending to show that the defendant's statement is trustworthy, plus independent prima facie evidence that the injury actually occurred." *Id*. at 60. Admissions, like confessions, must also be corroborated. *See id*. at 58-59.

We disagree with the post-conviction court's conclusion that an instruction on corroboration was not necessary when corroborating evidence existed. *See United States v. Adams*, 583 F.3d 457, 469 (6th Cir. 2009) (holding that it was error for the district court to refuse an instruction on corroboration despite the existence of corroborating evidence) (citing *United States v. Marshall*, 863 F.2d 1285, 1288 (6th Cir. 1988)). However, even if trial counsel provided deficient performance in failing to request a special jury instruction, we must determine whether the deficiency resulted in prejudice. *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 687; *Baxter*, 523 S.W.2d at 936). The post-conviction court concluded that Petitioner was not prejudiced by trial counsel's failure to request the instruction. The Tennessee Supreme Court has held that "the analytical framework for the prejudice inquiry at post-conviction mirrors the harmless error inquiry on direct appeal" in an ineffective assistance of counsel case based on an erroneous jury instruction. *Moore v. State*, 485 S.W.3d 411, 421 (Tenn. 2016) (citing *State v. Richmond*, 90 S.W.3d 648, 662 (Tenn. 2002)). In *Moore*, our supreme court held that the prejudice inquiry turns on "whether a reasonable probability exists" that a properly instructed jury would have reached a different conclusion, given the correct instruction. *Id*. In analyzing the sufficiency of the convicting evidence on direct appeal, a panel of this Court noted that "several witnesses placed [Petitioner] in the vicinity of the shooting[.]" *Delshun Jones*, 2016 WL 1563087, at *6. Petitioner's conviction was based on more than

just his statements. Thus, we conclude that Petitioner was not prejudiced by trial counsel's failure to request a special instruction.

Petitioner also contends that the trial court should have instructed the jury on various matters for which the post-conviction court concluded there was no legal basis to support such an instruction. Petitioner argues that "the jurors should have been told that the cell phone records were obtained contrary to the law," that Petitioner was not "allowed to attend the court proceedings regarding Marco Crawford," and that testimony about a crime stopper tip was hearsay.

Petitioner summarily claims that "[b]oth trial counsel and appellate counsel failed to highlight these concerns, which have appeared to significantly prejudice Petitioner, and caused him to be convicted of the charges against him." However, Petitioner provides no further factual support or legal authority for his claim of prejudice. Petitioner has failed to establish that any of these instructions were reasonable or that a request by trial counsel would have been granted. Petitioner acknowledges in his brief that the issue of the admissibility of his cell phone records was challenged at trial and on direct appeal. Petitioner offers no authority for his suggestion that trial counsel should have requested or the trial court should have given an instruction commenting on the admissibility of evidence. As the post-conviction court noted, the admissibility of Petitioner's cell phone records and the determination of whether a statement is inadmissible hearsay are "legal question[s] for the trial court and not for the jury." Petitioner states in his brief that he "has a right to confront and cross-examine witnesses" and that "court proceedings are open to the public" in support of his argument that the jury should have been instructed that Petitioner was not allowed to attend some unspecified court proceeding involving Marco Crawford; however, Petitioner has not demonstrated that he was denied his right to confront Mr. Crawford or any of the State's witnesses.

*Due Process Claim*

Finally, Petitioner alleges that he was denied a fair trial because the State was allowed "to play word games" about its deal with witness Carl Allen in exchange with his testimony at Petitioner's trial. Petitioner asks this Court "to enter a ruling requiring the State to inform the jury, or to require the trial court to inform the jury, when a testifying witness who is incarcerated either has a formal deal in place for his/her testimony or has an informal deal in place."

We begin by clarifying the role of an appellate court. It is not the role of an appellate court to direct a trial court proceeding or "enter a ruling" such as the one requested by Petitioner in this appeal. Rather, appellate courts review the trial court's application of the law to the facts of a case after a judgment is entered.

- 9 -

The State argues that because Petitioner failed to raise this issue at trial or on direct appeal, the issue is waived for purposes of post-conviction relief. *See* T.C.A. § 40-30-106(g). Code section 40-30-106(g) states in pertinent part, "[a] ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented." T.C.A. § 40-30-106(g). Although the issue of whether Petitioner's due process rights were violated as a result of the State's failure to disclose an agreement with a witness in exchange for that witness's testimony was not addressed on direct appeal, we note that Mr. Allen acknowledged at trial that he sent a letter to the prosecutor offering to testify in Petitioner's case in exchange for dismissal of several pending charges. He testified that although he "hope[d] to get some type of leniency . . . as a result of coming forward," the prosecutor "ha[d] made it clear that there [were] no agreements in exchange for [his] testifying." *Delshun Jones*, 2016 WL 1563087, at *3. Moreover, at the post-conviction hearing, trial counsel testified that he attempted to expose Mr. Allen's bias during cross-examination. Petitioner did not present any evidence at the post-conviction hearing that a deal existed between the State and Mr. Allen in exchange for his testimony against Petitioner.

Because the issue could have been raised on direct appeal, the issue is waived. Additionally, Petitioner cites no authority in support of his argument. *See* Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b).

As to all of Petitioner's claims, the post-conviction court gave detailed and thorough findings of fact and conclusions of law, and the record supports the post-conviction court's findings and conclusions. Petitioner is not entitled to relief.

CONCLUSION

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE

- 10 -