**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James Carrel LUMAN and Billy Gene Trammell, Defendants-Appellants.**

**Nos. 79–1074, 79–1075.**

United States Court of Appeals, Tenth Circuit.

Submitted March 12, 1980.

Decided June 23, 1980.

---

Hubert H. Bryant, U. S. Atty. and Kenneth P. Snoke, Asst. U. S. Atty., N. D. Oklahoma, Tulsa, Okl., for plaintiff-appellee.

Robert S. Lowery, Tulsa, Okl., for defendants-appellants.

Before HOLLOWAY, McWILLIAMS and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

By indictment James Carrel Luman and Billy Gene Trammell were charged with the

sale of six oil field drill bits of a value of more than $5,000, which were moving as interstate commerce, knowing that the drill bits had been stolen, in violation of 18 U.S.C. § 2315. A jury convicted both defendants, who now appeal their respective convictions. On appeal the defendants urge two grounds for reversal: (1) insufficiency of the evidence; and (2) prejudicial misconduct on the part of both the trial judge and the Government prosecutor. Neither of these grounds warrants reversal, and we therefore affirm.

The oil field drill bits here involved were stolen from the R. L. Manning Company drilling operation near Wamsutter, Wyoming. Twenty-eight days later Trammell and Luman sold the drill bits for $1,500 to undercover F.B.I. agents in Tulsa, Oklahoma.

18 U.S.C. § 2315 provides, in part, that "[w]hoever receives, conceals, stores, barters, sells, or disposes of any goods . . . of the value of $5,000 or more, . . . moving as, or which are a part of, or which constitute interstate or foreign commerce, knowing the same to have been stolen . . . . Shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

The defendants contend that the evidence is legally insufficient to sustain their respective convictions in two particulars: (1) insufficient evidence to show that the drill bits at the time of the sale were still moving as interstate commerce, and (2) insufficient evidence to show that the defendants knew the bits had been stolen. We shall first consider the latter matter.

▇ The issue as to whether a defendant in a criminal proceeding knows that he is dealing with stolen property is generally a matter to be resolved by the jury. The fact that a defendant denies knowledge that the property in question was stolen does not end the matter. It is just another fact and circumstance to be considered by the jury. The facts and circumstances in the instant case which look toward guilty knowledge on the part of the defendants may be summarized as follows:

1. Neither defendant, particularly defendant Trammell, was in the business of buying and selling oil field drilling bits. Trammell was a printer by trade, and Luman was in the business of steam cleaning heavy equipment and also claimed to be a broker for heavy equipment.

2. The drill bits were worth approximately $15,700, yet were sold for less than one-tenth of that amount.

3. The drill bits were new and in their original boxes, and the defendants told the undercover FBI agents that the drill bits were new, yet both defendants testified at trial that they did not tell the FBI the bits were new, and that they believed the drill bits were "reconditioned."

4. The transaction took place in a motel parking lot, the bits being loaded from one car to a car parked nearby, and the payment therefore was made in cash, while defendant Luman and the undercover agent were "squatted down" between a car and a fence.

5. No receipt or bill of sale was obtained by defendant Trammell when he obtained the goods, and no receipt or bill of sale was provided to the agents who purchased the drill bits from the defendants. Cash was used throughout the transaction.

6. Additionally, defendant Luman made several statements to the undercover agents during the negotiations indicating that he knew he was dealing in stolen property. These statements included: (a) That he had to be careful because the "heat" was watching him, and that he had to be watchful for "snitches"; (b) That he had recently "lost" a backhoe to police authorities; and (c) That he also offered to sell other items, such as a $6,500 goose-neck trailer for $2,000.

▇ The foregoing recital of facts and circumstances should be viewed in the light of the well established rule that unexplained possession of recently stolen proper-

ty is sufficient to support a finding that the possessor knew he was dealing with stolen property. *Barnes v. U. S.*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *U. S. v. Brown*, 541 F.2d 858 (10th Cir. 1976), *cert. denied*, 429 U.S. 1026, 97 S.Ct. 650, 50 L.Ed.2d 630. Indeed, unexplained possession of recently stolen property is sufficient to support a finding that the possessor himself stole the property in the first instance. *U. S. v. Davis*, 487 F.2d 112 (5th Cir. 1973), *cert. denied*, 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878 (1974). In the present case, the drill bits were undisputably stolen in Wyoming, and in less than thirty days were in the possession of the two defendants in Oklahoma. The "explanation" offered was that Trammell bought the drill bits in Tulsa, Oklahoma from a Don Collins. Not surprisingly, Collins' whereabouts are unknown. Without belaboring the point, the record is such as to support the jury's determination that Trammell and Luman knew the drill bits were stolen.

The defendants also assert that there was insufficient evidence to show that the drill bits at the time of the sale to the undercover FBI agents were still moving as interstate commerce. 18 U.S.C. § 2315 proscribes the receipt, concealment or sale of stolen goods moving as interstate commerce. The goods in question must retain their interstate character at the time the accused received, concealed, or sold them. *United States v. Pichany*, 490 F.2d 1073 (7th Cir. 1973). The question as to whether the stolen property is moving in interstate commerce has been held to almost invariably present a jury question. *United States v. Tobin*, 576 F.2d 687 (5th Cir.), *cert. denied*, 439 U.S. 1051, 99 S.Ct. 731, 58 L.Ed.2d 711 (1978). A defendant need not himself know that the goods are moving as interstate commerce. It is sufficient that his actions were in fact one step in a total scheme of interstate transportation. *United States v. Pichany*, supra. And a number of courts have permitted a jury to infer from defendant's unexplained possession in one state of goods stolen in another state not only that the defendant knew the goods were stolen, but also that the defendant's activities were one step in the total scheme of interstate transportation of the stolen goods. *United States v. Pichany*, supra. Of course, the ultimate sale of the stolen goods is a very essential part of the total scheme, for without the sale there can be no profit. See also *United States v. Kidding*, 560 F.2d 1303 (7th Cir.), *cert. denied*, 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977) and *United States v. Gardner*, 516 F.2d 334 (7th Cir.), *cert. denied*, 423 U.S. 861, 96 S.Ct. 118, 46 L.Ed.2d 89 (1975).

Under the authorities above cited, we think there is sufficient evidence to sustain the interstate commerce requirement of 18 U.S.C. § 2315. The drill bits were stolen in Wamsutter, Wyoming, and in a comparatively short time turned up in the possession of the defendants in Tulsa, Oklahoma. The explanation offered was an old one—the goods had been acquired from a person who could not now be located. All things considered, the evidence is such as to permit a finding that the drill bits had not "come to rest" in Oklahoma, but still were a part of the total scheme of interstate commerce. The evidence in this regard is not legally insufficient.

The remaining ground for reversal relates to the conduct of the trial judge and the prosecuting attorney. It is claimed that the trial judge improperly "rehabilitated" a Government witness who had just been "demolished" on cross-examination. Our study of the record indicates that the witness in question was neither demolished on cross-examination nor rehabilitated by questions of the trial judge. The questions put by the judge were few in number, and did not really relate to any critical issue. There is no substance to the argument that the trial judge by his interrogation of the witness evidenced hostility toward the defendants or in anywise demonstrated partiality. A trial judge does have the power to interrogate witnesses in an effort to elicit the truth. *Glasser v. United States*, 315 U.S. 60, 82, 62 S.Ct. 457, 470, 86 L.Ed. 680 (1942).

The defendants both testified and in their direct examination it was brought out that the two first met when they were inmates of a federal correctional institute in

Seagoville, Texas. The prosecuting attorney in his closing argument referred to the defendants as "roommates" in the federal prison. No objection to such characterization was made at trial, but on appeal such is relied on to show prosecutorial misconduct. In our view the characterization was innocuous. Most certainly it is not such plain error as would require a reversal.

Judgments affirmed.