UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles P. SOTERAS,
Defendant-Appellant.

No. 84–1541.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 7, 1985.

Decided Aug. 8, 1985.

Ruben Castillo, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Robert J. Weber, Robert J. Weber, Ltd., Chicago, Ill., for defendant-appellant.

Before WOOD, CUDAHY and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Defendant-appellant Charles P. Soteras appeals his conviction under 18 U.S.C. § 371 [1] for conspiring to violate the wire fraud statute (18 U.S.C. § 1343) [2] and the Travel Act (18 U.S.C. § 1952). [3] The issues on appeal are (1) whether there was sufficient evidence to support Soteras's conspiracy conviction, and (2) whether his acquittal on the two substantive counts of wire fraud and use of an interstate wire facility in violation of the Travel Act requires reversal of his conspiracy conviction. We affirm.

## I.

On October 8, 1977, Soteras was arrested and charged with auto theft in Blue Island,

Illinois. This case arises out of Soteras's subsequent efforts, with the aid of his attorneys John Gervasi and Michael Ettinger, to bribe Blue Island police officer Daniel Furay in order to get the theft charges dropped.

Following Soteras's arrest on October 8, Officer Furay drove Soteras to the Blue Island police station. Soteras told Officer Furay that "[t]hings don't have to be this way. There could be harmony." At the police station, Soteras called his attorney, John Gervasi, and Gervasi came down to the station to post Soteras's bond. As Gervasi and Soteras were leaving the police station, Gervasi told Furay that he would be talking to him later.

On October 21, 1977, Officer Furay found Gervasi's business card in his mail slot at work. The reverse side of the card contained the following note from Gervasi, dated 10/21/77: "Danny, Going out of town Saturday, Sunday and Monday. Will return Tuesday afternoon. Could you please call me? I would like to talk to you." Upon receiving this note, Officer Furay contacted the Special Prosecutions Unit of the State's Attorney's Office, which then monitored and transcribed most of the subsequent conversations between Furay and Gervasi, Ettinger, and Soteras. These transcripts were received into evidence in the trial below.

In the few weeks following October 21, 1977, Gervasi and Ettinger had numerous conversations with Officer Furay in which

---

1. If two or more persons conspire ... to commit any offense against the United States ... and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both. 18 U.S.C. § 371 (1982).

2. Whoever, having devised or intending to devise any scheme or artifice to defraud, ... transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both. 18 U.S.C. § 1343 (1982).

3. Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—
(1) distribute the proceeds of any unlawful activity; or
(2) commit any crime of violence to further any unlawful activity; or
(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,
and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both. 18 U.S.C. § 1952(a) (1982).

they devised a scheme to get Soteras's case dismissed. They agreed that Furay would try to convince the complaining witnesses (the owners of the car that Soteras had stolen) to drop the charges against Soteras by telling them that Soteras was cooperating with the police department's efforts to get the real leaders of the auto theft ring. There was also some negotiation during these initial conversations about the amount that Furay would be paid for his "help." After Furay insisted on getting some of the money up front, Gervasi delivered $1,000 to Furay at Furay's home on the evening of Friday, November 4, 1977.

Soteras was scheduled to appear in court on the following Monday, November 7, 1977. When the complaining witnesses did not show up, the State requested and received a continuance to November 28, 1977. The State's request for a continuance surprised Gervasi, who had expected the case to be dismissed. Gervasi called Furay that evening and expressed concern that the State might try to contact the complaining witnesses to find out why they had not appeared in court that day. Furay agreed to talk to the witnesses again to tell them that the police department's investigation into the auto theft ring was confidential and that they should therefore not disclose their conversations with Furay to the State's Attorney. Furay said that he would tell the witnesses to explain that they were simply not interested in prosecuting the case any further.

Over the next few weeks, Furay kept Gervasi informed of all developments concerning the complaining witnesses. What Gervasi did not know was that the State had requested a continuance in Soteras's case in order to obtain more evidence against the defendants in its investigation of the bribery attempt, and that Furay's "reports" about the complaining witnesses had all been made up by the State's Attorney's Office. Furay first told Gervasi that the Assistant State's Attorney had gone to the witnesses' house with a court reporter to take sworn statements from them about whether they had been threatened or bribed by anybody not to testify against Soteras. On November 21, 1977, Furay called Gervasi and told him that the State's Attorney had subpoenaed the complaining witnesses to appear before a grand jury on Wednesday, November 23, to explain why they had not appeared in court on November 7. Furay offered to call Gervasi after debriefing the witnesses on their grand jury testimony to let him know what had happened. Gervasi replied that he was going to visit his father in Arizona that week but would call Furay when he returned on Friday. One hour later, Gervasi called Furay back and said that he would call him from Arizona upon his arrival Wednesday evening.

On Wednesday, November 23, 1977, Gervasi called Officer Furay as planned, stating that he had just arrived and that the connection was bad because he was "2,000–2,500 miles away." Furay told Gervasi that the witnesses had not testified before the grand jury but had instead been interviewed by the Assistant State's Attorney for a second time. Furay stated that the witnesses had told the prosecutor that they were not interested in pursuing the case against Soteras. Furay then asked Gervasi when he would get the remainder of the money that he had been promised, and Gervasi agreed to pay him on Monday if the witnesses did not appear in court.

On Monday, November 28, 1977, Soteras's case was called for the second time, and again the complaining witnesses did not appear. The State then moved to dismiss the case against Soteras with leave to reinstate, and the motion was granted. Soteras and Gervasi went to Furay's home that evening, and while Soteras remained in the car, Gervasi delivered $1,500 to Furay. Thirty minutes later, Gervasi called Furay and told him that there was something very important that Furay should be aware of, and that he should meet them in a local restaurant in fifteen minutes. When Furay arrived at the restaurant, Soteras took him to a downstairs room to check him for recording devices. After they returned to their table, Soteras informed Furay that a gray car had followed

him and Gervasi from Furay's residence that evening. Soteras then stated: "After all, you know, we're all in this together, all of us are."

Furay and Gervasi had several more conversations after November 28, in which they discussed who was in the gray car, whether they had been watched, what they should say if they were questioned by anybody, and whether Soteras would be reindicted. When Gervasi went on vacation for two weeks, he told Furay to contact Soteras if there were any developments and that Soteras would then contact Gervasi. Soteras called Furay twice while Gervasi was away, each time asking Furay to meet him somewhere to talk. Furay refused, explaining that he was afraid that they were still being watched and that it would look bad for them to be seen together. The last conversation between Furay and the defendants concerning the Soteras case was in December 1977.

Gervasi and Ettinger were indicted for bribery in state court in February 1978. The case against them was subsequently dropped after the trial judge ruled that under Illinois law, the State could not introduce at trial the transcripts of the defendants' telephone conversations with Furay and could not use the transcripts to prepare their witnesses for trial.

In September 1982, a federal grand jury returned an indictment charging Soteras, Gervasi, and Ettinger with three counts of wire fraud, three counts of violating the Travel Act by using an interstate wire facility to further the bribery scheme, and one count of conspiracy to commit wire fraud and to violate the Travel Act. The jury acquitted Ettinger on all counts, acquitted Soteras and Gervasi on two of the substantive counts, and was unable to reach a verdict on the remaining counts.

The government then amended the indictment and proceeded to a second trial against Gervasi and Soteras on only three counts: one count of wire fraud, one count of using an interstate wire facility to further the bribery scheme in violation of the Travel Act, and one count of conspiracy. The jurisdictional basis for counts one and two was the November 23, 1977 telephone call from Gervasi in Arizona to Officer Furay in Illinois. The second jury found Gervasi guilty on all three counts, acquitted Soteras on the two substantive counts, and found Soteras guilty on the conspiracy count. Soteras was sentenced on March 29, 1984, to three years imprisonment.

## II.

### A. Sufficiency of the Evidence

Soteras's first argument on appeal is that there was insufficient evidence to support his conspiracy conviction.[4] We must affirm the jury's verdict "unless the evidence, viewed in the light most favorable to the Government, could not have persuaded any rational trier of fact of defendant's

---

**4.** As part of this argument, Soteras contends that there was insufficient evidence that an interstate wire facility was used because the only evidence of the interstate nature of the November 23, 1977 telephone call from Gervasi to Furay was Gervasi's uncorroborated statement that he was "2,000–2,500 miles away." Soteras invokes the rule of corroboration, which provides that an accused cannot be convicted on the uncorroborated confession or admission of the accused, see Smith v. United States, 348 U.S. 147, 152–53, 75 S.Ct. 194, 197–98, 99 L.Ed. 192 (1954); United States v. Fearn, 589 F.2d 1316, 1321–22 (7th Cir.1978), to support this contention. Assuming without deciding that the rule of corroboration can apply to admissions made by a coconspirator as well as by the accused himself, we nevertheless reject this argument because Gervasi's statement was made during

the course of the conspiracy rather than after it was over. See Warszower v. United States, 312 U.S. 342, 347, 61 S.Ct. 603, 606, 85 L.Ed. 876 (1941) (admissions made prior to the crime need no corroboration); United States v. Pennell, 737 F.2d 521, 537 (6th Cir.1984) (admissions made before or during commission of a crime need no corroboration), cert. denied, —— U.S. ——, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985). The rule of corroboration exists to prevent errors in convictions based upon untrue confessions alone, whether voluntary or involuntary. See Smith v. United States, 348 U.S. at 153, 75 S.Ct. at 197 (explaining purpose of the rule). The rule thus does not apply to statements made prior to or during the commission of the crime, when that danger does not exist. See Warszower, 312 U.S. at 347, 61 S.Ct. at 606.

guilt beyond a reasonable doubt." *United States v. Mayo,* 721 F.2d 1084, 1087 (7th Cir.1983).

■ In order to prove conspiracy to commit the offense of wire fraud, the government must establish that a defendant agreed to participate in a scheme to defraud in which it was reasonably foreseeable that an interstate wire facility would be used in furtherance of the scheme. *See United States v. Shelton,* 669 F.2d 446, 451 (7th Cir.) (conspiracy to commit mail fraud), *cert. denied,* 456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed.2d 454 (1982); *United States v. Craig,* 573 F.2d 455, 486 (7th Cir.1977) (same), *cert. denied,* 439 U.S. 820, 99 S.Ct. 82, 58 L.Ed.2d 110 (1978).[5] Soteras apparently concedes that there was sufficient evidence that he agreed to participate in a scheme to defraud,[6] but argues that the use of an interstate wire facility was not reasonably foreseeable and that the November 23 telephone call was not in furtherance of the scheme.

■ The government argues that the interstate telephone call was both reasonably foreseeable and made in furtherance of the scheme to defraud. There was clearly sufficient evidence on the second element. Gervasi called Furay on November 23 in order to find out what had happened when the complaining witnesses had supposedly appeared before the grand jury that day. After Furay told Gervasi that the witnesses had insisted that they were not interested in testifying against Soteras, Gervasi observed that the State's Attorney might either subpoena the witnesses to appear in court the following Monday, rely on Furay's testimony to establish probable cause,

or dismiss the case with leave to reinstate. In the event that the State's Attorney relied solely on Furay's testimony, Gervasi said that he might want to talk to Furay about what questions might be asked and what answers Furay could give. There was also some discussion about when and where Furay would receive the rest of his money. This November 23 conversation was the last time that Gervasi and Furay spoke with each other prior to Soteras's final court appearance on November 28. The jury could reasonably infer that the November 23 call was made to finalize the specifics of the plan to get Soteras's case dismissed, and thus that the call was made in furtherance of the scheme to defraud.

The more difficult question is whether the interstate telephone call was a reasonably foreseeable element of the bribery scheme to which Soteras agreed. Although the evidence on this point is not overwhelming, we believe that it is sufficient. Gervasi told Furay during one of their first conversations that Soteras was a personal friend as well as a client. When Gervasi came to the police station on October 8 to post bond for Soteras, he told Furay that he would not leave a wedding for just anybody. There is also some indication in the record that Gervasi informed the court and/or prosecution on November 7, when the judge ordered the case continued until November 28, that he would be going to Arizona to see his father over the Thanksgiving holidays immediately preceding that date. Soteras was present in court that day. The jury might infer from this evidence that Soteras knew that Gervasi was planning to go to Arizona over the Thanksgiving holidays.

---

**5.** Because the requisite elements of the wire fraud statute, 18 U.S.C. § 1343, and the mail fraud statute, 18 U.S.C. § 1341, are virtually identical, cases construing the mail fraud statute are equally applicable to the wire fraud statute. *United States v. Feldman,* 711 F.2d 758, 763 n. 1 (7th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 352, 78 L.Ed.2d 317 (1983).

**6.** In addition to Soteras's statement to Officer Furay immediately following his arrest that "there could be harmony," his driving Gervasi to Furay's home on November 28 to deliver $1,500

in bribe money to Furay, and his statement to Furay in a restaurant that same evening that "we're all in this together," Ettinger advised Furay when negotiating Furay's fee that he thought he could "get two [thousand dollars] out of them for you" and Gervasi later told Furay that "we are flexible." The jury could reasonably infer from these references to "them" and "we," as well as from Soteras's own statements, that Soteras was aware of and had agreed to participate in the bribery scheme.

The jury might further infer from the evidence that it was reasonably foreseeable that a phone call would be made from Gervasi to Furay while Gervasi was in Arizona. Gervasi and Ettinger kept in fairly close contact with Furay throughout the course of the bribery scheme, meeting or talking on the phone with him at least a dozen times between Soteras's arrest and the initial November 7 court date and ten times between the November 7 and the November 28 court dates. It would be reasonable to assume that Soteras was kept apprised of the frequency and nature of the contacts between his attorneys-co-conspirators and Furay. In light of the fact that Soteras's court date was scheduled for November 28, the Monday following the Thanksgiving holidays, the jury could conclude that it was reasonably foreseeable that Gervasi would make a phone call to Furay at some time over the holidays in order to discuss and finalize the plans for Monday's court appearance.

In sum, when viewed in the light most favorable to the government, we believe that there was sufficient evidence to support Soteras's conviction for conspiracy to violate the wire fraud statute.

■ Whether there was sufficient evidence to support a conviction for conspiracy to violate the Travel Act is a much closer question. We need not decide this question, however, since there was sufficient evidence to support Soteras's conviction for conspiracy to commit wire fraud. When an indictment alleges a conspiracy to commit several offenses against the United States, the conspiracy charge is sustained by adequate pleadings and proof of conspiracy to commit any one of the offenses. See United States v. Alvarez, 735 F.2d 461, 465–66 (11th Cir.1984) (upholding defendant's conviction for conspiracy to accomplish two objectives when at least one of the two objectives proved); United States v. Mackey, 571 F.2d 376, 387 n. 14 (7th Cir.1978) (upholding defendant's conspiracy

conviction even if government failed to prove one of several objects of the conspiracy); United States v. James, 528 F.2d 999, 1014 (5th Cir.) (affirming defendant's conviction for conspiracy to violate three federal statutes even though one of the three may not have been supported by requisite overt act), cert. denied, 429 U.S. 959, 97 S.Ct. 382, 50 L.Ed.2d 326 (1976). Since there was sufficient evidence to sustain Soteras's conviction for conspiracy to violate the wire fraud statute, therefore, any infirmity in the Travel Act allegation would be irrelevant.

## B. Effect of Soteras's Acquittal on Substantive Counts

■ Soteras contends that his acquittal on the substantive charges of wire fraud and use of an interstate wire facility in violation of the Travel Act mandate the reversal of his conviction for conspiracy to commit those offenses. His reasoning is that the jury's judgment of acquittal on the substantive counts could have been grounded on a finding that no interstate telephone call in furtherance of a scheme to defraud had been made.[7] The fallacy in this argument is that the commission of a substantive offense and conspiracy to commit that offense are separate and distinct offenses. See Pinkerton v. United States, 328 U.S. 640, 643, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489 (1946); United States v. Frans, 697 F.2d 188, 192 (7th Cir.) (government need not prove interstate transportation of stolen goods in order to support conviction for conspiracy to do so), cert. denied, — U.S. ——, 104 S.Ct. 104, 78 L.Ed.2d 107 (1983); United States v. Fellabaum, 408 F.2d 220, 223 (7th Cir.) (government need not prove interstate travel in order to establish conspiracy to violate Travel Act), cert. denied, 396 U.S. 858, 90 S.Ct. 125, 24 L.Ed.2d 10 (1969). Acquittal on a substantive count therefore does not bar a conviction for conspiracy unless there is an identity of the proof necessary. United States v. Dalzotto, 603 F.2d 642, 646 (7th Cir.), cert. de-

---

7. This argument ignores the fact that Gervasi was convicted of the two substantive counts by the same jury, indicating that the jury in fact

concluded that Gervasi had made the interstate telephone call and that it was made in furtherance of the scheme to defraud.

*nied,* 444 U.S. 994, 100 S.Ct. 530, 62 L.Ed.2d 425 (1979); *United States v. Isaacs,* 493 F.2d 1124, 1152 (7th Cir.), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146 (1974). Since the substantive offenses of wire fraud and violation of the Travel Act require different elements of proof than an agreement to commit those crimes, *see Isaacs,* 493 F.2d at 1153; *Fellabaum,* 408 F.2d at 223, Soteras's acquittal on the substantive counts does not require reversal of his conspiracy conviction.

### III.

The defendant's conviction under 18 U.S.C. § 371 for conspiracy to commit offenses against the United States is AFFIRMED.