945 F.2d 411
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Louis Wayne FENNELL, Defendant-Appellant.
 No. 90-1214.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 1, 1991.
 
 Before McKAY, Chief Judge, and BARRETT and HOLLOWAY, Circuit Judges.
 ORDER AND JUDGMENT*
 McKAY, Chief Judge.
 
 
 1
 Mr. Louis Wayne Fennell was charged in a multi-count indictment. Count I charged Mr. Fennell, Mr. Lewis Dixon and Mr. Whittier Buchanan with conspiracy to possess with intent to distribute, in violation of 21 U.S.C. § 846. Counts II through V and Count VI charged Mr. Dixon and/or Mr. Buchanan with possession with intent to distribute. Count VI was the only other charge against Mr. Fennell. That count charged Mr. Fennell and Mr. Dixon with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Mr. Buchanan entered into a plea agreement, and Mr. Fennell and Mr. Dixon were tried together. Mr. Dixon was convicted on all counts. Mr. Fennell, however, was found guilty of Count I, the conspiracy count, but acquitted of Count VI, the substantive possession count.
 
 
 2
 Mr. Fennell is appealing his conviction on the conspiracy count. He argues that (1) the evidence was insufficient to support the conviction, (2) there was a fatal variance between the indictment alleging a single conspiracy and proof at trial of multiple conspiracies, and (3) the trial court erred in denying a motion for new trial based on newly discovered evidence and wrongful withholding of exculpatory evidence.
 
 I. FACTS
 
 3
 The Drug Enforcement Administration received information through a confidential informant that one Whittier Buchanan was distributing cocaine. The informant took an undercover agent to Mr. Buchanan and introduced her as a friend. The undercover agent made four separate purchases of cocaine from Mr. Buchanan.
 
 
 4
 Each time the agent wished to make a purchase from Mr. Buchanan, Mr. Buchanan made a telephone call. Mr. Buchanan said he made the call to a pager. A few minutes later, Mr. Buchanan got a return call. Mr. Buchanan and the agent then drove to another location. Each time, Mr. Dixon appeared at the location. Each time, Mr. Buchanan left the agent to talk with Mr. Dixon before delivering the cocaine to the agent.
 
 
 5
 The agent then arranged a direct meeting with Mr. Dixon. At that meeting he denied any involvement in the drug business, claiming only to be interested in the vending machine business. However, just prior to meeting with the agent, Mr. Dixon noticed a surveillance car containing two more agents and stared at it. Shortly after that meeting, Mr. Buchanan told the informant that Mr. Dixon had identified the undercover agent as law enforcement. He arrived at this conclusion because of the cars that were following her.
 
 
 6
 After hearing that she had been identified, the agent made no further purchases through Mr. Buchanan. Instead, the informant approached the appellant, Mr. Fennell, whom she had identified to the DEA as another cocaine dealer, and asked to make a cocaine purchase. This was Mr. Fennell's first involvement in the undercover operation which led to his arrest.
 
 
 7
 The informant met Mr. Fennell at his apartment. Utilizing the same methods as Mr. Buchanan had used, Mr. Fennell placed a telephone call to a pager. In a few minutes, Mr. Fennell received a return call. Mr. Dixon's cellular phone record shows a call to Fennell's apartment. Mr. Fennell then left the apartment, and returned after a period of time with the cocaine. The agents who had Mr. Fennell under surveillance testified that he met with a man driving a white Corvette. Mr. Dixon was seen leaving the area in a white Corvette, one of several cars he possessed.
 
 
 8
 The informant later attempted to make another purchase from Mr. Fennell, but he refused. When the informant asked why, Mr. Fennell told her it was "because my man says you hang out with too many police." Record, vol. 7, at 592. Mr. Fennell then described the undercover agent, whom he had never met. Mr. Fennell said that he knew she was police. The undercover agent had previously dealt only with Mr. Buchanan and Mr. Dixon. Shortly after this, all three men were arrested.
 
 II. SUFFICIENCY OF EVIDENCE
 
 9
 "Evidence is considered sufficient to support a criminal conviction if, viewing all the evidence, both direct and circumstantial, in the light most favorable to the government, a reasonable trier of fact could find the essential elements of the crime beyond a reasonable doubt." United States v. Culpepper, 834 F.2d 879, 881 (10th Cir.1987). Mr. Fennell claims that the jury's verdict of acquittal on the substantive count of possession indicates that the evidence was insufficient on the conspiracy count. He also argues that the acquittal on the substantive count bars conviction for the conspiracy because there was an identity of proof necessary for the two counts.
 
 
 10
 Verdicts which are inconsistent or logically incompatible are not rendered invalid. See United States v. Powell, 469 U.S. 57; United States v. Beitcher, 467 F.2d 269, 274 (10th Cir.1972). Thus, disregarding the inconsistent verdicts, our inquiry is limited to whether sufficient evidence existed that Mr. Fennell was knowingly involved in a conspiracy to possess cocaine with intent to distribute. We conclude that there was such evidence.
 
 
 11
 Without attempting to explain the jury's conclusions, we note that substantial evidence was adduced which tended to undermine the credibility of the informant to whom Mr. Fennell allegedly sold cocaine. There was, however, testimony from undercover agents that Mr. Fennell met with Mr. Dixon. Furthermore, Mr. Dixon's cellular phone record showed a call to the apartment where Mr. Fennell was staying. Thus, the jury reasonably could have concluded that Mr. Fennell conspired with Mr. Dixon to sell cocaine.
 
 
 12
 Mr. Fennell's argument that an identity of proof is required for the two offenses charged is without merit. He cites to United States v. Soteras, 770 F.2d 641, 646 (1985). However, Soteras also explains that conspiracy, which requires an agreement to commit a substantive offense, is different from the substantive offense, which requires no agreement. Id. at 647. In this case, the substantive offense of possession for which Mr. Fennell was acquitted requires no agreement. Therefore, the proof required for the conspiracy was not identical to that required for the substantive offense.
 
 III. VARIANCE
 
 13
 A variance between indictment and proof may be fatal if it "affect[s] the substantial rights of the accused." Kotteakos v. United States, 328 U.S. 750, 757 (1946); United States v. Record, 873 F.2d 1363 (10th Cir.1989). Mr. Fennell argues that while the government charged a single conspiracy, the evidence showed two conspiracies with one common actor, Mr. Dixon. He argues that his rights were prejudiced by the presentation of evidence as to Mr. Dixon's dealings with Mr. Buchanan. Mr. Fennell did not raise this objection at trial, however. Thus, we must review for plain error. If Mr. Fennell had objected to the variance at the close of the evidence and had requested a corrective instruction which was refused, this would be a different case. While, under these facts, Mr. Fennell might be able to make a convincing argument if the issue had been properly preserved for appeal, we do not find plain error.
 
 
 14
 IV. NEWLY DISCOVERED EVIDENCE AND BRADY VIOLATION
 
 
 15
 Mr. Fennell made a motion for a new trial based on newly discovered evidence and the alleged withholding of exculpatory evidence in violation of Brady v. Maryland,, 373 U.S. 83 (1963). At trial, the government informant, for the first time, revealed that another person, whose name she did not know, was present in the apartment when the informant agreed to buy cocaine from Mr. Fennell. This person was a Mr. Steve Braden, who, apparently, shared the apartment with Mr. Fennell. After trial, Mr. Fennell obtained an affidavit from Mr. Braden in which Mr. Braden states that at no time did he observe Mr. Fennell and the informant discussing or dealing drugs, and that he had never known Mr. Fennell to use drugs. We review the denial of a motion for new trial under an abuse of discretion standard. United States v. Sutton, 767 F.2d 726, 728 (10th Cir.1985).
 
 
 16
 To obtain a new trial based on newly discovered evidence, Mr. Fennell must show that his failure to learn of the evidence at the time of trial was not due to the defendant's lack of diligence. United States v. Bradshaw, 787 F.2d 1385, 1391 (10th Cir.1986). Because Mr. Braden was Mr. Fennell's housemate and because Mr. Fennell was aware of Mr. Braden's presence at the time of the alleged transaction, he could easily have pursued this evidence prior to trial. He was in a better position than the government to know that Mr. Braden's presence might have provided exculpatory testimony. Thus, the district court properly denied Mr. Fennell's motion for a new trial based on newly discovered evidence. We also approve the district court's finding that no Brady violation occurred. There was no evidence that the government deliberately withheld exculpatory information.
 
 
 17
 The order of the district court is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3