**UNITED STATES COURT OF APPEALS**
**Filed 6/12/96**
**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JOAN ELLA JENKIN, also known as
Jonna Jennings, also known as Joan
Ramirez,

      Defendant-Appellant.

No. 95-6432
(D.C. No. CR-95-80-M)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **EBEL**, and **HENRY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Following a Memorial Day weekend robbery of a United States Post Office, a jury convicted Appellant Joan Ellen Jenkin of stealing and concealing certain Postal Service property, counterfeiting and forging a money order, and unlawfully possessing stolen mail. Jenkin now appeals the verdict, arguing the evidence was insufficient to sustain her conviction on each count. For the reasons stated below, we AFFIRM.

Upon arriving to work on May 29, 1995, a postal worker at the Southeast Station of the Oklahoma City, Oklahoma Post Office noticed that the station had been burglarized over the Memorial Day holiday. Among the items missing were three "bait" money orders[1] and a six-piece Integrated Retail Terminal ("IRT"), which looks like a computer but is used for the dedicated purpose of weighing mail, determining the amount of postage, and printing receipts and postage labels. On June 1, 1995, Jenkin's landlord deposited one of the three bait money orders in the bank, which Jenkin had given to him in order to pay her rent. Jenkin wrote "Jonna Jennings," the name by which her landlord knew her, on the "payor" portion of the money order. When the bait money order was picked up by postal inspectors, inspectors interviewed Jenkin's landlord on June 5. On June 6, inspectors went to Jenkin's residence, where she consented to a search of the house. During the search, inspectors found the IRT system which had been stolen from the post office underneath a pile of articles in the bedroom. They also found a gray bag in

_____

[1] A bait money order is a money order on which extra digits have been added to the serial number, which is recorded and kept at the post office.

the living room which contained 200 envelopes addressed to post office boxes at the Southeast Station. The envelopes contained unnegotiated checks worth about $26,000. Inspectors found various other items from the station, including credit cards, a postal hamper with a Southeast Station mailing label, and two flat tubs containing documents from the station. The two other money orders which allegedly were stolen have not been recovered.

A federal grand jury in the Western District of Oklahoma issued a four-count indictment against Jenkin on June 22, 1995. Two of the counts--count one and count three--charged Jenkin and codefendant James Edward Sandersfield with aiding and abetting each other in receiving, retaining and concealing stolen United States Postal Service property in violation of 18 U.S.C. §§ 2(a) and 641. Count two charged Jenkin with attempt to defraud, and falsely making and forging material endorsements and signatures upon the blank money order in violation of 18 U.S.C. § 500. Count four charged Jenkin and Sandersfield with unlawfully aiding and abetting each other in unlawfully having in their possession the contents of 200 pieces of mail which had been taken or stolen from Southeast Station in violation of 18 U.S.C. § 1708. The jury returned a guilty verdict against Jenkin on all four counts.

In reviewing a challenge to the sufficiency of the evidence, we review the record de novo to determine only whether the evidence--both direct and circumstantial, together with reasonable inferences to be drawn therefrom--viewed in the light most favorable to

the government, "is substantial enough to establish guilt beyond a reasonable doubt."

U.S. v. Johnson, 42 F.3d 1312, 1319 (10th Cir. 1994), cert. denied, 115 S. Ct. 1439 (1995).  In conducting this review, we are not to reweigh the credibility of the witnesses, and we must accept the jury's resolution of conflicting evidence.  U.S. v. Sapp, 53 F.3d 1100, 1103 (10th Cir. 1995), cert. denied, 116 S. Ct. 796 (1996).  We will reverse a conviction only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  U.S. v. Hoenscheidt, 7 F.3d 1528, 1530) (10th Cir. 1992).

Embezzlement and Theft of Postal Service Property

Count One charged Jenkin with receiving, retaining and concealing the $150 money order, while Count Three charged Jenkin with receiving, retaining and concealing the IRT.  18 U.S.C. § 2 provides:

> (a)      Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

Furthermore, 18 U.S.C. § 641 provides:

> Whoever receives, conceals, or retains [any record, voucher, money, or thing of value to the United States] with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted--

> Shall be fined under this title or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined under this title or imprisoned not more than one year, or both.

> The word "value" means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.

- 4 -

(emphasis added).

Regarding the bait money order, Jenkin first argues that the government presented no evidence that its value was more than $100. However, William Wright, an employee of the Southeast Station, testified that bait money orders are actual money orders which can be traded. Wright testified that if the bait money order is received in good faith, the bearer actually will receive $150 for it. We consider this evidence sufficient to support a jury decision that the stolen money order had a value of $150.

Second, Jenkin argues that the government presented no evidence that she knew the money order was stolen. However, we have held that the possession of property recently stolen, if not satisfactorily explained, is ordinarily a circumstance from which an inference may reasonably be drawn that the person knew the property had been stolen. See United States v. Smith, 833 F.2d 213, 218 (10th Cir. 1987); United States v. Luman, 624 F.2d 152, 154-55 (10th Cir. 1980). See also United States v. Winters, 420 F.2d 523 (3d Cir. 1970). Accordingly, the unexplained possession and the use of stolen money orders is ample evidence to support a conviction. McGee v. United States, 402 F.2d 434, 437-38 (10th Cir. 1968), cert. denied, 394 U.S. 908 (1969). Having reviewed the record, we agree with the government that there was sufficient circumstantial evidence from which a reasonable jury could have found that Jenkin knew the money order was stolen. The theft occurred during the Memorial Day weekend in 1995. A few days later, on or before June 1, Jenkin used the stolen money order--which was identified by its serial

numbers as one of three bait money orders taken from the Southeast Station--to pay her rent. Even though she explained that she received the money order in a trade with two acquaintances, the jury was not obligated to consider this explanation for possessing the stolen property a satisfactory one.

Regarding the IRT system, Jenkin again argues that the government failed to prove it had a value of more than $100. The Postal Service purchased the IRT system in 1989 for $2,039. Diana Key Quiroga, a Material Management Specialist for the Postal Service, testified that the Postal Service keeps items on its books at the acquisition cost because to replace them likely would cost the same as or more than the acquisition cost. Also, on cross-examination of Quiroga, Jenkin's counsel suggested depreciating the IRT $291 each year during the system's seven-year depreciation life. Even assuming this amount is the correct amount using straight line depreciation, the system still would be worth $293, and thus in excess of $100.

Finally, Jenkin argues that the government presented no evidence that she knew the IRT was stolen. Again, we reject this argument on the ground that the IRT system was found in the house in which Jenkin resided soon after the theft, thereby supporting an inference that Jenkin knew the property was stolen. See Smith, 833 F.2d at 218; Luman, 624 F.2d at 154-55.

**Forgery**

18 U.S.C. § 500 provides:

Whoever, with intent to defraud, passes, utters or publishes or attempts to pass, utter or publish any such forged or altered money order or postal note, knowing any material initials, signature, stamp impression or indorsement thereon to be false, forged, or counterfeited, or any material alteration therein to have been falsely made . . . [s]hall be fined not more than $5,000 or imprisoned not more than five years, or both.

Here, there is evidence that Jenkin forged a signature when she signed the money order not with her legal name, but with an alias. See United States v. Jaynes, 75 F.3d 1493, 1499 (10th Cir. 1996) (noting that signing a check in a name other than one's real name tends to establish fraudulent intent). Furthermore, we believe that an intent to defraud can be inferred from the fact that Jenkin possessed the money order soon after the robbery, which suggests that she knew the money order was stolen, and that she used this stolen money order to pay her rent.

**Possession of Stolen Mail**

18 U.S.C. § 1708 provides:

Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal car, package, bag, or mail, or any article or thing contained therein, which has been stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled or abstracted--[s]hall be fined . . . or imprisoned not more than five years.

To prove a violation of Section 1708, the government must establish: (1) the defendant possessed stolen mail; (2) the mail was stolen from a mail receptacle or mail route; and (3) the defendant knew the mail was stolen. United States v. Douglas, 668 F.2d 459, 461 (10th Cir.), cert. denied, 457 U.S. 1108 (1982).

Jenkin argues that the evidence at trial failed to establish the first element of the crime--that she "possessed" the stolen mail matter discovered in her residence. According to Jenkin, proof of the possession element is lacking here because the stolen mail was found inside a gray bag and there was no evidence adduced at trial to show that she knew the bag contained stolen mail. The district court correctly instructed the jury that possession could be either actual or constructive. Thus, even if Jenkin did not actually possess the stolen mail, the jury was entitled to find that she constructively possessed the mail if she "knowingly [held] the power to exercise dominion and control" over the mail. See U.S. v. Sullivan, 919 F.2d 1403, 1430 (10th Cir. 1990) (analyzing constructive possession involving possession of an unregistered firearm in violation of 18 U.S.C. § 922(g)). Dominion, control, and knowledge may be inferred if a defendant had exclusive possession of the premises; however joint occupancy alone cannot sustain such an inference. U.S. v. Mills, 29 F.3d 545, 549 (10th Cir. 1994) (citing Sullivan, 919 F.2d at 1431). In cases of joint occupancy, where the government seeks to prove constructive possession by circumstantial evidence, it must present evidence to show some connection between the defendant and the contraband. Id. A conviction based upon constructive possession will be upheld "only when there [is] some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband." Id. (quoting United States v. Mergerson, 4 F.3d 337, 349 (5th Cir. 1993), cert. denied, 114 S. Ct. 1310 (1994)).

Here, Jenkin argues that she did not have sole access to the room where the bag of mail was found, but that co-defendant Sandersfield had access as well. However, as in Sullivan, there is more evidence connecting Jenkin to the stolen mail than the fact that she had joint dominion and control over the room where it was found. The fact that she had passed a money order stolen from the Southeast Station, as well as the presence of the IRT in her bedroom, lead to an inference that she was aware of the robbery at the post office and therefore aware of the presence of the stolen mail in her living room. Because the jury was entitled to infer that Jenkin had knowledge of the stolen mail in her living room, they also could infer that she exercised dominion and control over the mail and accordingly possessed it.

Therefore, we AFFIRM for the reasons stated above. The mandate shall issue forthwith.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge